DISTRICT COURT, JEFFERSON COUNTY, COLORADO

| | |
|---|---|
| Address: | 100 Jefferson County Pkwy |
| | Golden, CO 80401 |
| Phone No.: | (720) 772-2500 |

DATE FILED: September 12, 2017 4:30 PM
FILING ID: 20102325818FF
CASE NUMBER: 2017CV31398

**REBECCA NORTON,**

*Plaintiff,*

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA; JEFFERSON COUNTY, COLORADO;** and **JEFFERSON COUNTY LONG TERM DISABILITY PLAN,**

*Defendants.*

▲ COURT USE ONLY ▲

Case Number:

Div.

*Attorneys for Plaintiff:*
Shawn E. McDermott, #21965
Timothy M. Garvey, #42668
MCDERMOTT LAW, LLC
2300 15th Street, Suite 200
Denver, Colorado 80202
303-964-1800
303-964-1900 (fax)
*shawn@mcdermottlaw.net*
*tim@mcdermottlaw.net*

## COMPLAINT AND JURY DEMAND

Plaintiff, Rebecca Norton ("Ms. Norton"), by and through her counsel of record, McDermott Law, LLC, for her Complaint and Jury Demand against Defendants Life Insurance Company of North America ("LINA"); Jefferson County, Colorado ("Jefferson County"); and Jefferson County Long Term Disability Plan (the "Plan Administrator") states, alleges, and avers as follows:

**EXHIBIT**

**A**

## I.    JURISDICTION, VENUE, PARTIES

1.      Ms. Norton, at all times pertinent hereto, is and was a resident of the State of Colorado.

2.      Defendant Jefferson County is a resident of the State of Colorado.

3.      Defendant LINA is a Pennsylvania insurance company, with its principal place of business in Philadelphia, Pennsylvania.

4.      LINA is and at all times relevant was registered with the Colorado Division of Insurance to conduct, and does conduct, the business of insurance in the State of Colorado.

5.      LINA is a subsidiary company of Cigna Corporation.

6.      Ms. Norton was employed by Defendant Jefferson County as a Payroll Supervisor from 2007 through January 14, 2014.

7.      As an employee of Jefferson County, Ms. Norton participated in the Jefferson County Long Term Disability Plan (the "Plan").

8.      The Plan constitutes an employee benefit providing, among other benefits, long-term disability ("LTD") insurance benefits to Plan participants, including Ms. Norton.

9.      The Plan is considered a "governmental plan" as that term is defined in 29 U.S.C. § 1002(32).

10.      Because the Plan is a "governmental plan," it is exempt from the Employee Retirement Income Security Act ("ERISA") under 29 U.S.C. § 1003 (b)(1).

11.      As part of the Plan, LINA issued a Group Long Term Disability Insurance, Group Policy Number LK-961849, (the "LTD Policy") to Jefferson County and for the benefit of its employees, including Plaintiff. (A true and correct copy of the LTD Policy is attached hereto and incorporated herein as Exhibit 1).

2

12.    The LTD Policy was issued to Ms. Norton, who was an eligible Plan participant, in the State of Colorado.

13.    The LTD Policy was paid for in the State of Colorado.

14.    The LTD Policy's effective date was January 1, 2009.

15.    Upon information and belief, the Plan Administrator (i.e., Defendant, the Jefferson County Long Term Disability Plan) was responsible for administering the Plan.

16.    Upon information and belief, the Plan Administrator designated LINA as the claim administrator for the Plan.

17.    Upon information and belief, LINA makes all determinations regarding claimants' eligibility for LTD benefits under the LTD Policy.

18.    Upon information and belief, LINA, as the insurer and underwriter of the LTD Policy, must pay benefits to a Plan participant consistent with the terms of the LTD Policy.

19.    If a Plan participant, such as Ms. Norton, is entitled to LTD benefits under the LTD Policy, LINA must pay from its own funds all benefits owed to the Plan participant.

20.    Because LINA is both the claim administrator and the payor of benefits under the LTD Policy and the Plan, LINA suffers from an inherent conflict of interest.

21.    LINA, as the insurer, owes Plan participants, such as Ms. Norton, the duties of good faith and fair dealing when handling claims for benefits under the LTD Policy.

22.    LINA, as a disability insurer, owes Plan participants, such as Ms. Norton, fiduciary duties when handling claims for benefits under the LTD Policy.

23.    LINA's breaches of both the LTD Policy and the duties it owed to Ms. Norton occurred in the State of Colorado.

24.    The tortious conduct alleged in this action occurred in the State of Colorado.

3

25.    The injuries Ms. Norton suffered as a result of LINA's breaches and tortious conduct occurred in the State of Colorado.

26.    The Court has subject matter jurisdiction over the issues asserted in this Complaint and Jury Demand.

27.    Under C.R.C.P. 98, venue is proper in this Court, which Ms. Norton designates as the site for this action.

## II.    GENERAL ALLEGATIONS

### A.    THE INSURANCE POLICY AT ISSUE

28.    Under the LTD Policy, LINA promised to pay LTD benefits to any Plan participant, including Ms. Norton, so long as that participant satisfied the Policy's definition of "disability."

29.    The LTD Policy defines "Disability/Disabled" as follows:

You are considered Disabled if, solely because of Injury or Sickness, you are:

1. unable to perform the material duties of your Regular Occupation; and

2. unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.

After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:

1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; and

2. unable to earn 80% or more of your Indexed Earnings.

### B.    MS. NORTON'S DISABLING CONDITIONS

30.    Ms. Norton suffers from a rare and painful condition called psuedotumor cerebri, which occurs when the pressure inside of the skull increases for no obvious reason.

31.    Symptoms of psuedotumor cerebri often mimic those of a brain tumor, although no tumor is present.

32.     Due to her psuedotumor cerebri, Ms. Norton continues to have "high pressure" issues, which include temporary loss of vision, blurry vision, disabling head and neck pain, pulsing/whooshing in her ears, nausea/vomiting, dizziness and cognitive issues.

33.     In addition to the pseudotumor cerebri, Ms. Norton has a history of diverticulosis in the sigmoid colon.

34.     In August of 2016, Ms. Norton underwent her first lumbar peritoneal shunt procedure, which failed.

35.     On August 20, 2016, Ms. Norton submitted to a second lumbar peritoneal shunt surgery.

36.     Due to the location of the shunt, tubing, and drainage, Ms. Norton suffers from severe abdominal and back pain nearly every day.

**C.     MS. NORTON'S CLAIMS FOR BENEFITS UNDER THE PLAN**

37.     Because of the disabling conditions described above, Ms. Norton's stopped working as a full-time Payroll Manager for Jefferson County as of June 12, 2013.

38.     Because Ms. Norton was unable to perform the material duties of her Regular Occupation as of June 12, 2013, that same day, she submitted a claim for short term disability ("STD") benefits under the Plan.

39.     By letter dated July 19, 2013, LINA initially denied Ms. Norton's claim for STD benefits.

40.     By letter dated August 23, 2013, Ms. Norton timely appealed LINA's denial of her claim for STD benefits.

41.     On October 1, 2013, while Ms. Norton's STD appeal was pending, she attempted to return to work on a part-time basis.

42.     On October 21, 2013, LINA overturned its original decision to deny STD benefits and paid Ms. Norton's claim through October 31, 2013.

43.     LINA continued to pay Ms. Norton's STD benefits through December 11, 2013, which was the full term of the STD benefit period.

44.     Thereafter, Ms. Norton applied for LTD benefits under the Plan.

45.     On January 14, 2014, Ms. Norton and her treatment providers determined she was unable to continue performing the duties of her occupation, even on a part-time basis, and she ceased working part-time on that date.

46.     By letter dated January 31, 2014, LINA denied Ms. Norton's claim for LTD benefits.

47.     On March 26, 2014, Ms. Norton timely appealed LINA's denial of her claim for LTD benefits.

48.     Ms. Norton's appeal included updated medical evidence and employment information to support her claim.

49.     On May 23, 2014, LINA overturned its denial of Ms. Norton's LTD benefits, determining that she met the LTD Policy's definition of disability.

50.     LINA subsequently reimbursed Ms. Norton for the past-due benefits and put her on claim for receipt of future benefits under the LTD Policy.

51.     As a Plan participant, Ms. Norton was also entitled to apply for (and did apply for) a waiver of her life insurance premiums ("LWOP") as a result of her being totally disabled from any occupation.

52.     On September 12, 2014, Ms. Norton received a letter from LINA advising her that it approved her claim for LWOP benefits, confirming that it agreed (as of that date) that she was unable to perform the material duties of any occupation.

**D.    LINA PAYS FOR MS. NORTON'S SSDI CLAIM, WHICH IS PROMPTLY APPROVED**

53.    In January of 2014, Ms. Norton received a letter from non-party Allsup advising her that LINA was paying its fees to assist her in applying for and obtaining Social Security Disability Insurance ("SSDI") benefits.

54.    Under the LTD Policy, LINA may offset the amount it pays Ms. Norton by the amount she receives in SSDI benefits.

55.    The standard for obtaining SSDI benefits is higher than it is under the LTD Policy, as an SSDI claimant must prove she not only that she cannot do the work that she previously did, she must also prove that she cannot adjust to going other work because of her disability.

56.    Upon information and belief, the average wait time for SSDI applicants to obtain a final ruling is over 800 days, with most applicants proceeding through several levels of review before obtaining benefits, if at all.

57.    On March 6, 2014, Ms. Norton completed her SSDI application.

58.    On April 23, 2014, Ms. Norton completed additional SSDI forms and questionnaires.

59.    On June 2, 2014, Ms. Norton received a letter from the Social Security Administration stating that her SSDI benefits were approved, with a date of disability of June 12, 2013.

**E.    LINA CONCLUDES MS. NORTON CANNOT PERFORM THE MATERIAL DUTIES OF ANY OCCUPATION.**

60.    LINA paid Ms. Norton's LTD benefits throughout the two-year duration of the "own occupation" definition of disability under the LTD Policy.

61.    By letter dated June 12, 2015, (despite having already approved the LWOP benefit due to its conclusion that Ms. Norton was disabled from any occupation) LINA advised Ms. Norton it was reviewing her claim for the pending change in definition of disability from "own occupation" to "any occupation" under the LTD Policy.

62.      By letter dated September 4, 2015, LINA advised Ms. Norton it completed its review of her claim for benefits under the "any occupation" definition, and determined that she continued to meet the LTD Policy's definition of disability under the any occupation provision of the Policy and that it would continue to pay her benefits under the LTD Policy.

F.      **LINA SUDDENLY TERMINATES MS. NORTON'S BENEFITS UNDER THE PLAN**

63.      By letter dated January 11, 2017, LINA terminated Ms. Norton's LTD benefits, informing her that it no longer believed she met the definition of disability under the LTD Policy.

64.      In terminating Ms. Norton's LTD benefits, LINA cited no evidence that her condition improved to the point that she would be able to perform the material duties of any occupation.

65.      In terminating Ms. Norton's LTD benefits, LINA ignored evidence that her conditions had not improved and remained disabling.

66.      In terminating Ms. Norton's LTD benefits, LINA disregarded the SSDI award, stating only that it was "in receipt of more recent information than the SSA had to consider at the time of its decision."

G.      **LINA MISHANDLES MS. NORTON'S APPEAL, FORCING HER TO SUE**

67.      By letter dated May 2, 2017, Ms. Norton timely appealed LINA's adverse benefit determination (i.e., the termination of her LTD benefits), and submitted additional evidence supporting her ongoing entitlement to LTD benefits.

68.      On May 20, 2017, Kimberly Nichols, LINA's Claim Manager, e-mailed Ms. Norton confirming that she received her appeal and indicating that LINA was reviewing it.

69.      General practice in the disability insurance industry is for insurers to render an appeal decision within 45 days, absent special circumstances, and in any event no longer than 90 days.

70.      On June 23, 2017, 52 days after submitting her appeal, Ms. Norton, having received no response regarding her appeal, e-mailed Ms. Nichols for the status of her appeal.

71.     Four days later, by email dated June 27, 2017, Ms. Nichols responded to Ms. Norton, stating, "Your claim is currently being reviewed for the Waiver of Premium policy. I have requested your file to be sent to me as soon as that has been completed. Based on that review, I will be able to provide additional information regarding your LTD claim."

72.     Because LINA had not terminated Ms. Norton's LWOP benefit, there was no reason for LINA's review of her LWOP benefits to affect its review of her appeal regarding LINA's termination of her LTD benefits.

73.     By letter dated July 21, 2017, 80 days after receiving Ms. Norton's appeal, LINA, via its LTD claim department (not its appeals department), informed Ms. Norton that the new information she provided with her appeal did not change the claims departments opinion of its termination of her LTD benefits and that it was therefore referring her appeal to its Disability Appeals Team for an independent review.

74.     Under standard disability insurance industry practices, LINA should have referred Ms. Norton's appeal to the Disability Appeals Team when it received her appeal.

75.     Under standard disability insurance industry practices, LINA should have performed an independent review of her appeal when it received her appeal.

76.     On August 2, 2017, 92 days after receiving Ms. Norton's appeal, Ms. Norton (through counsel) informed LINA that the time for rendering an appeal decision had passed and demanded a decision.

77.     Two days later, by letter dated August 4, 2017, LINA wrote directly to Ms. Norton (despite knowing she was represented by counsel) and informed her: "[p]lease be advised that we have received your appeal request and your appeal will be handled at the following office."

9

78. LINA's August 4, 2017, letter requested Ms. Norton to provide additional information by August 31, 2017, at which time LINA would "move forward" with a medical review (which would take about "four to six weeks").

79. On August 28, 2017, 118 days after receiving Ms. Norton's appeal, LINA once again indicated it was still conducting a "medical review" and would require additional time to render a claim decision.

80. As of the filing of this Complaint, 133 days after LINA received Ms. Norton's appeal, LINA has still not rendered a final decision on the appeal submitted by Ms. Norton.

81. Ms. Norton has fully cooperated with any and all required internal appeal procedures under the LTD Policy.

**H.    LINA'S ADVERSE BENEFIT DETERMINATION WAS UNSUPPORTED**

82. Under standard disability insurance industry practices, when an insurer terminates an insured's LTD benefits, it must have evidence that the insured's condition improved and that the insured no longer meets the policy's definition of disability.

83. In terminating Ms. Norton's LTD benefits, LINA ignored all documents and information it had available to it from Plaintiff, her treating medical providers, and others demonstrating that she is unable to perform the material duties of any occupation.

84. From January of 2017 (when LINA terminated Ms. Norton's benefits) through now, Plaintiff has been and remains disabled as defined in the LTD Policy.

85. At all times pertinent hereto, LINA was and continues to be liable for paying Ms. Norton's LTD benefits under the LTD Policy.

86. LINA's denial of Ms. Norton's LTD benefits was contrary to the evidence of record and is unreasonable, incorrect, improper, and unsupported by the evidence.

10

87.     LINA's acts and omissions have compelled Ms. Norton to sue to recover benefits owed to her under the LTD Policy.

88.     LINA's acts and omissions are and were designed to discourage Ms. Norton from asserting her rights and asserting her claims with regard to LTD benefits.

89.     LINA knew, or should have known, that its acts and omissions were unreasonable, or it recklessly disregarded the fact that they were unreasonable.

90.     As a direct and proximate result of the LINA's conduct, Ms. Norton has suffered damages including, without limitation, compensable economic and noneconomic harms and losses.

I.     **LINA'S HISTORY OF IMPROPERLY IGNORING SSDI AWARDS**

91.     LINA has previously admitted to engaging in less than fair claims practices on disability insurance claims.

92.     On March 13, 2013, in the matter of Life Insurance Company of North America, Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company (formerly Know[n] as Alta Health and Life Insurance Company), LINA entered into a Regulatory Settlement Agreement (the "RSA").

93.     The Colorado Division of Insurance adopted the RSA as a Participating State on May 30, 2013.

94.     Under the RSA, LINA agreed that when making disability benefit determinations, it would, in certain circumstances, give significant weight in a claimant's favor to the award of SSDI benefits.

95.     Under the RSA, LINA agreed that "[a]ffording significant weight to a SSDI award means that the SSA records related to the SSDI award are reviewed and consideration of the SSA's judgment that a claimant is disabled for SSDI purposes will generally be an essential element of the Disability evaluation under the governing Disability contract."

11

96.    Ms. Norton's appeal falls within the "certain circumstances" for which LINA agreed to give significant weight in a claimant's favor to the award of SSDI benefits.

97.    Upon information and belief, in terminating Ms. Norton's LTD benefits, LINA failed to review and consider the SSA's judgment that she was disabled for SSDI purposes.

98.    Upon information and belief, instead of reviewing and considering the SSDI award, LINA ignored reviewed and considered only information that supported, if any, its termination of Ms. Norton's LTD benefits.

### III.    FIRST CLAIM FOR RELIEF
#### (Breach of Contract)

99.    Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

100.    The LTD Policy issued by LINA constitutes a contract of insurance.

101.    Plaintiff has been entitled to receive LTD benefits under the LTD Policy from the date of termination through now and into the foreseeable future.

102.    Plaintiff is entitled to payment of past-due LTD benefits under the Plan and the LTD Policy.

103.    Through the acts and omissions described herein, as well as those yet to be uncovered through discovery, Defendant breached the contract of insurance (i.e., the LTD Policy).

104.    Defendant's breach of the insurance contract has caused Plaintiff to suffer injuries, damages, and losses in amounts to be proven at trial.

### IV.    SECOND CLAIM FOR RELIEF
#### (Bad Faith Breach of Insurance Contract)

105.    Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

106.    Defendant owed duties to Plaintiff as her fiduciary.

107.    Defendant owed duties to Plaintiff under the Policy's implied covenant of good faith and fair dealing, wherein Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the benefits of the insurance contract.

108.    Defendant breached its fiduciary duties and its duties of good faith and fair dealing by its actions, which included, without limitation, the following unreasonable acts:

a.    Disregarding Ms. Norton's rights or having a reckless disregard that its conduct was unreasonable;

b.    Failing to pay Plaintiff's claim for LTD benefits under the LTD Policy;

c.    Ignoring the opinions of Plaintiff's treating physicians regarding the nature of her disability;

d.    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e.    Placing its interests in not paying benefits ahead of Ms. Norton's interest in receiving benefits owed under the LTD Policy;

f.    Failing to properly investigate Ms. Norton's claims for benefits;

g.    Terminating Ms. Norton's benefits with no reasonable basis for doing so;

h.    Selectively considering only those records and documents that supported its decision to terminate benefits;

i.    Failing to render a timely appeal decision;

j.    Forcing Ms. Norton to sue to obtain benefits owed to her under the LTD Policy; and

k.    Other conduct to be revealed during discovery.

109.    Defendant knew its acts and omissions were unreasonable, or it recklessly disregarded the reasonableness of its acts and omissions.

110.    As a proximate result of Defendant's actions, Plaintiff has suffered economic damages and losses in an amount to be proved at trial, including, but not limited to:

      a.    The contract benefits;

      b.    Being forced to incur additional attorneys' fees and costs in litigation;

      c.    The adverse effect on her financial well-being from the denial of benefits; and

      d.    Other losses and damages alleged elsewhere herein.

111.    As a proximate result of the Defendant's actions and conduct, Plaintiff sustained compensable non-economic injuries, including without limitation, inconvenience, emotional stress, impairment of the quality of life, mental anguish, humiliation, distress of mind, embarrassment, fear, anxiety, grief, worry, indignity, apprehension, and loss of the enjoyment of life, in amounts to be proved at trial.

## V.    THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 and Relief under C.R.S. § 10-3-1116)

112.    Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

113.    Plaintiff is a "first-party claimant" as that term is defined under C.R.S. § 10-3-1115.

114.    The LTD Policy is a contract of insurance issued in the State of Colorado in 2009 or after.

115.    Through the acts and omissions alleged herein, and others likely to be uncovered during discovery, LINA unreasonably denied Ms. Norton's claim for LTD benefits within the meaning of C.R.S. § 10-3-1115.

116.    Through the acts and omissions alleged herein, and others likely to be uncovered during discovery, LINA unreasonably delayed payment of Ms. Norton's claim for LTD benefits within the meaning of C.R.S. § 10-3-1115.

14

117.    Under C.R.S. § 10-3-1116(1), Ms. Norton may bring this action in this Court to recover reasonable attorneys' fees, court costs, and two times the covered benefit.

## VI.    FOURTH CLAIM FOR RELIEF
### (Violation of the Colorado Consumer Protection Act)

118.    Plaintiff re-alleges each and every allegation of above and below as if fully set forth herein.

119.    LINA's bad faith conduct described above and below constitutes an unfair or deceptive trade practice prohibited by the State of Colorado under the Colorado Consumer Protection Act.

120.    The deceptive trade practices occurred in the course of LINA's business.

121.    LINA has engaged in a pattern and practice of adjusting claims for disability benefits in a manner that is unreasonable, that violates its fiduciary duties, that violates its duties of good faith and fair dealing, and that violates Colorado's Unfair Claims Settlement Practices Act.

122.    Upon information and belief, LINA's pattern and practice of violative behavior includes:

    a.    failing to provide requested disability insurance claim files in a reasonable time and manner;

    b.    denying claims without any reasonable bases for doing so;

    c.    refusing to reasonably consider non-exertional limitations in the administration of LTD claims;

    d.    establishing informal quotas as to certain classes of appeal specialists on the number of internal appeals that can be granted in a particular month and/or quarterly basis;

    e.    forcing insureds to sue to recover benefits due under an insurance policy;

    f.    misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

    g.   failing to acknowledge and act reasonably promptly upon communications about claims;

    h.   refusing to pay claims without conducting a reasonable investigation based upon all available information;

    i.   attempting to settle claims for less than the amount a reasonable person would believe is owed;

    j.   failing to promptly explain the how its insurance policies and/or the law support its denials and/or terminations of claims; and

    k.   Other conduct to be revealed during discovery.

123.    Upon information and belief, LINA's violations are rampant and significantly impact the public as actual and/or potential consumers of LINA's insurance products.

124.    As a result of LINA's rampant violations of the Colorado Consumer Protection Act, Plaintiff is entitled to recover statutory penalties in the amount of three times her damages in this action and her reasonable attorneys' fees.

        **WHEREFORE**, Plaintiff Rebecca Norton asks that judgment be entered in her favor and against the Defendant as follows:

1.    For payment of all LTD benefits due under the LTD Policy;

2.    For a declaration that Ms. Norton remains disabled under the terms of the LTD Policy;

3.    For compensatory economic, noneconomic, special, and exemplary damages in amounts to be proven at trial;

4.    For interest (statutory and moratory) as provided by law on benefits owed under the LTD Policy from January 11, 2017 through the date of judgment;

5.    For two times the covered benefit, pursuant to C.R.S. §10-3-1116;

6.    For treble damages, fees and costs as permitted under the Colorado Consumer Protection Act;

7.    For attorneys' fees and other costs of suit, including expert witness fees; and

8.    For such other and further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

DATED this 12th day of September 2017.

McDERMOTT LAW, LLC

*s/ Timothy M. Garvey*

Timothy M. Garvey, #42668
Shawn E. McDermott, #21965
2300 15th Street, Suite 200
Denver, CO 80202
(303) 964-1800
(303) 964-1900
*tim@mcdermottlaw.net*
*shawn@mcdermottlaw.net*
**Attorneys for Plaintiff**

<u>Plaintiff's Address</u>:
5808 Pierson Street
Arvada, CO 80004

# Group Disability
# Insurance Certificate

DATE FILED: September 12, 2017 4:30 PM
FILING ID: 20102325818FF
CASE NUMBER: 2017CV31398

# Jefferson County, Colorado

## IMPORTANT NOTICES

If you reside in one of the following states, please read the important notices below:

**Arizona, Florida and Maryland residents:**

**The group policy is issued in the state of Colorado and will be governed by its laws. If you reside in a state other than Colorado, this certificate of insurance may not provide all of the benefits and protections provided by the laws of your state. PLEASE READ YOUR CERTIFICATE CAREFULLY.**

**Texas residents:**

IMPORTANT NOTICE: To obtain information or make a complaint:

You may call Special Marketing Division's toll-free telephone number for information or to make a complaint at 1-800-441-1832.

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at 1-800-252-3439.

You may write the Texas Department of Insurance:
P O Box 149091
Austin, TX 78714-9104
FAX # (512) 475-1771

PREMIUM OR CLAIM DISPUTES: Should you have a dispute concerning your premium or about a claim you should contact the agent or company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

AVISO IMPORTANTE: Para solicitar información o presentar una queja:

Llame a la línea gratuita de la División Especial de Marketing para obtener información o presentar una queja al 1-800-441-1832.

Puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos o quejas llamando al 1-800-252-3439.

También puede escribir al Texas Department of Insurance (Departamento de Seguros de Texas):
P O Box 149091
Austin, TX 78714-9104
FAX: (512) 475-1771

CONFLICTOS POR PRIMAS O RECLAMACIONES: En caso de tener un conflicto relacionado con su prima o una reclamación, debe comunicarse primero con el agente o la compañía. Si el conflicto no se resuelve, usted puede comunicarse con el Departamento de Seguros de Texas.

# FOREWORD

Disability insurance provides individuals and their families with financial protection. The Disability Insurance Benefit described in this booklet will help secure your family's financial security in the event of your disability.

The need for disability insurance protection depends on individual circumstances and financial situations. This valuable coverage should add an extra dimension to your personal insurance portfolio.

In an effort to make your benefit program more comprehensive and responsive to your needs, your Employer is providing this insurance to you at no cost.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603        TDD (800) 336-2485
**A STOCK INSURANCE COMPANY**

**GROUP INSURANCE
CERTIFICATE**

We, the LIFE INSURANCE COMPANY OF NORTH AMERICA, certify that we have issued a Group Policy, LK-961849, to Jefferson County, Colorado.

We certify that we insure all eligible persons, who are enrolled according to the terms of the Policy.  Your coverage will begin and end according to the terms set forth in this certificate.

This certificate describes the benefits and basic provisions of your coverage.  You should read it with care so you will understand your coverage.

This is not the insurance contract.  It does not waive or alter any of the terms of the Policy.  If questions arise, the Policy will govern.  You may examine the Policy at the office of the Policyholder or the Administrator.

This certificate replaces any and all certificates which may have been issued to you in the past under the Policy.

Matthew G. Manders, President

TL-004704

O/O v-2

# TABLE OF CONTENTS

SCHEDULE OF BENEFITS ................................................................................................ 1

WHO IS ELIGIBLE ........................................................................................................ 3

WHEN COVERAGE BEGINS ........................................................................................ 3

WHEN COVERAGE ENDS ........................................................................................... 3

WHEN COVERAGE CONTINUES ................................................................................ 4

WHAT IS COVERED ..................................................................................................... 6

WHAT IS NOT COVERED ......................................................................................... 11

CLAIM PROVISIONS ................................................................................................. 11

ADMINISTRATIVE PROVISIONS ............................................................................ 13

GENERAL PROVISIONS ............................................................................................ 13

DEFINITIONS ............................................................................................................. 14

## SCHEDULE OF BENEFITS

| | |
|---|---|
| **Policy Effective Date:** | January 1, 2009 |
| **Policy Anniversary Date:** | January 1 |
| **Policy Number:** | LK-961849 |
| **Certificate Effective Date:** | May 9, 2013 |

**Eligible Class Definition:**
All active benefit eligible Employees of the employer who work a minimum of 35 hours each week.

**Eligibility Waiting Period**

If you were hired on or
before the Policy Effective Date:        The first of the month following the date of hire

If you were hired after
the Policy Effective Date:                The first of the month following the date of hire

**Elimination Period**                   26 weeks

**Gross Disability Benefit**
The lesser of 66.67% of your monthly Covered Earnings rounded to the nearest dollar or your Maximum Disability Benefit.

**Maximum Disability Benefit**           $6,000 per month.

**Minimum Disability Benefit**
The greater of $100 or 10% of your Monthly Benefit prior to any reductions for Other Income Benefits.

**Disability Benefit Calculation**
The Disability Benefit payable to you is figured using the Gross Disability Benefit, Other Income Benefits and the Return to Work Incentive. Monthly Benefits are based on a 30-day month. The Disability Benefit will be prorated if payable for any period less than a month.

During any month you have no Disability Earnings, the monthly benefit payable is the Gross Disability Benefit less Other Income Benefits. During any month you have Disability Earnings, benefits are determined under the Return to Work Incentive. Benefits will not be less than the minimum benefit shown in the Schedule of Benefits except as provided under the section Minimum Benefit.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that you receive on your own behalf or for your dependents, or which your dependents receive because of your entitlement to Other Income Benefits.

1

*Return to Work Incentive*
During any month you have Disability Earnings, your benefits will be calculated as follows.

Your monthly benefit payable will be calculated as follows during the first 24 months disability benefits are payable and you have Disability Earnings:

1.      Add your Gross Disability Benefit and Disability Earnings.
2.      Compare the sum from 1. to your Indexed Earnings.
3.      If the sum from 1. exceeds 100% of your Indexed Earnings, then subtract the Indexed Earnings from the sum in 1.
4.      Your Gross Disability Benefit will be reduced by the difference from 3., as well as by Other Income Benefits.
5.      If the sum from 1. does not exceed 100% of your Indexed Earnings, your Gross Disability Benefit will be reduced by Other Income Benefits.

After disability benefits are payable for 24 months, the monthly benefit payable is the Gross Disability Benefit reduced by Other Income Benefits and 50% of Disability Earnings.

No Disability Benefits will be paid, and insurance will end if we determine you are able to work under a modified work arrangement and you refuse to do so without Good Cause.

**Maximum Benefit Period**
The later of your SSNRA* or the Maximum Benefit Period listed below.

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | Your 65th birthday or |
| | the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

*SSNRA means the Social Security Normal Retirement Age in effect under the Social Security Act on the Policy Effective Date.

TL-004774

2

## WHO IS ELIGIBLE

If you qualify under the Class Definition shown in the Schedule of Benefits you are eligible for coverage under the Policy on the Policy Effective Date, or the day after you complete the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time you must be in Active Service to be eligible for coverage. Your Eligibility Waiting Period will be extended by the number of days you are not in Active Service.

Except as noted in the Reinstatement Provision, if you terminate your coverage and later wish to reapply, or if you are a former Employee who is rehired, you must satisfy a new Eligibility Waiting Period. You are not required to satisfy a new Eligibility Waiting Period if your insurance ends because you no longer qualify under your Class Definition, but you continue to be employed, and within one year you qualify again.

TL-004710

## WHEN COVERAGE BEGINS

You will be insured on the date you become eligible, if you are not required to contribute to the cost of this insurance.

If you are not in Active Service on the date your insurance would otherwise be effective, it will be effective on the date you return to any occupation for your Employer on a Full-time basis.

TL-004712

## WHEN COVERAGE ENDS

Your coverage ends on the earliest of the following dates:
1.    the date you are eligible for coverage under a plan intended to replace this coverage;
2.    the date the Policy is terminated;
3.    the date you are no longer in an eligible class;
4.    the day after the end of the period for which premiums are paid;
5.    the date you are no longer in Active Service;
6.    the date benefits end because you did not comply with the terms and conditions of the insurance coverage.

If you are entitled to receive Disability Benefits when the Policy terminates, Disability Benefits will be payable to you if you remain disabled and meet the requirements for the insurance. Any later period of Disability, regardless of cause, that begins when you are eligible under another disability coverage provided by any employer, will not be covered.

TL-007505.00

3

## WHEN COVERAGE CONTINUES

This provision modifies the When Coverage Ends provision to allow insurance to continue under certain circumstances if you are no longer in Active Service. Insurance that is continued under this provision is subject to all other terms of the When Coverage Ends provisions.

Your Disability Insurance will continue if your Active Service ends because of a Disability for which benefits under the Policy are or may become payable. Your premiums will be waived while Disability Benefits are payable. If you do not return to Active Service, this insurance ends when your Disability ends or when benefits are no longer payable, whichever occurs first.

If your Active Service ends due to personal or family medical leave approved timely by the Employer, insurance will continue for you for up to 12 weeks, if the required premium is paid when due.

If your Active Service ends due to any other excused short term absence from work that is reported to the Employer timely in accordance with the Employer's reporting requirements for such short term absence, your insurance will continue until the earlier of:
a.  the date your employment relationship with the Employer terminates;
b.  the date premiums are not paid when due;
c.  the end of the 30 day period that begins with the first day of such excused absence;
d.  the end of the period for which such short term absence is excused by the Employer.

Notwithstanding any other provision of this policy, if your Active Service ends due to layoff, termination of employment, or any other termination of the employment relationship, insurance will terminate and continuation of insurance under this provision will not apply.

If your insurance is continued pursuant to this When Coverage Continues provision, and you become Disabled during such period of continuation, Disability Benefits will not begin until the later of the date the Elimination Period is satisfied or the date you are scheduled to return to Active Service.

TL-004716

4

## TAKEOVER PROVISION

This provision applies to you only if you are eligible under this Policy and were covered for long term disability coverage on the day prior to the effective date of this Policy under the Prior Plan provided by the Policyholder or by an entity that has been acquired by the Policyholder.

A. This section A applies to you if you are not in Active Service on the day prior to the effective date of this Policy due to a reason for which the Prior Plan and this Policy both provide for continuation of insurance. If required premium is paid when due, we will insure an Employee to which this section applies against a disability that occurs after the effective date of this Policy for the affected employee group. This coverage will be provided until the earlier of the date: (a) you return to Active Service, (b) continuation of insurance under the Prior Plan would end but for termination of that plan; or (c) the date continuation of insurance under this Policy would end if computed from the first day you were not in Active Service. The Policy will provide this coverage as follows:

   1. If benefits for a disability are covered under the Prior Plan, no benefits are payable under this Plan.
   2. If the disability is not a covered disability under the Prior Plan solely because the plan terminated, benefits payable under this Policy for that disability will be the lesser of: (a) the disability benefits that would have been payable under the Prior Plan; and (b) those provided by this Policy. Credit will be given for partial completion under the Prior Plan of Elimination Periods and partial satisfaction of pre-existing condition limitations.

B. The Elimination Period under this Policy will be waived for a Disability which begins while you are insured under this Policy if all of the following conditions are met:

   1. The Disability results from the same or related causes as a Disability for which monthly benefits were payable under the Prior Plan;
   2. Benefits are not payable for the Disability under the Prior Plan solely because it is not in effect;
   3. An Elimination Period would not apply to the Disability if the Prior Plan had not ended;
   4. The Disability begins within 6 months of your return to Active Service and your insurance under this Policy is continuous from this Policy's Effective Date.

C. Except for any amount of benefit in excess of a Prior Plan's benefits, the Pre-existing Condition Limitation will not apply if you were covered under a Prior Plan and satisfied the pre-existing condition limitation, if any, under that plan. If you did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied under the Prior Plan's pre-existing condition limitation.

   Benefits will be determined based on the lesser of: (1) the amount of the gross disability benefit under the Prior Plan and any applicable maximums; and (2) those provided by this Policy.

   If benefits are payable under the Prior Plan for the Disability, no benefits are payable under this Policy.

TL-005108

## DESCRIPTION OF BENEFITS
## WHAT IS COVERED

**Disability Benefits**
We will pay Disability Benefits if you become Disabled while covered under this Policy. You must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. You must provide to us, at your own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.

We will require continued proof of your Disability for benefits to continue.

**Elimination Period**
The Elimination Period is the period of time you must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes.

**Disability Benefit Calculation**
The Disability Benefit Calculation is shown in the Schedule of Benefits. Monthly Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month. If you are working while Disabled, the Disability Benefit Calculation will be the Return to Work Incentive.

**Return to Work Incentive**
The Return to Work Incentive is shown in the Schedule of Benefits. You may work for wage or profit while Disabled. In any month in which you work and a Disability Benefit is payable, the Return to Work Incentive applies.

We will, from time to time, review your status and will require satisfactory proof of earnings and continued Disability.

**Minimum Benefit**
We will pay the Minimum Benefit shown in the Schedule of Benefits despite any reductions made for Other Income Benefits. The Minimum Benefit will not apply if benefits are being withheld to recover an overpayment of benefits.

6

## Other Income Benefits

If Disability Benefits are payable to you under this Policy, you may be eligible for benefits from Other Income Benefits. If so, we may reduce the Disability Benefits by the amount of such Other Income Benefits.

Other Income Benefits include:
1.  any amounts received (or assumed to be received*) by you or your dependents under:
    -   the Canada and Quebec Pension Plans;
    -   the Railroad Retirement Act;
    -   any local, state, provincial or federal government disability or retirement plan or law payable for Injury or Sickness provided as a result of employment with the Employer;
    -   any sick leave, salary continuation plan, or vacation pay received by the Employee;
    -   any work loss provision in mandatory "No-Fault" auto insurance.
2.  any Social Security disability or retirement benefits you or any third party receive (or are assumed to receive*) on your own behalf or for your dependents; or which your dependents receive (or are assumed to receive*) because of your entitlement to such benefits.
3.  any Retirement Plan benefits funded by the Employer. "Retirement Plan" means any defined benefit or defined contribution plan sponsored or funded by the Employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.
4.  any proceeds payable under any franchise or group insurance or similar plan. If other insurance applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, we will pay for our pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.
5.  any amounts received (or assumed to be received*) by you or your dependents under any workers' compensation, occupational disease, unemployment compensation law or similar state or federal law payable for Injury or Sickness arising out of work with the Employer, including all permanent and temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.
6.  any amounts paid because of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined.

Dependents include any person who receives (or is assumed to receive*) benefits under any applicable law because of your entitlement to benefits.

*See the Assumed Receipt of Benefits provision.

### Increases in Other Income Benefits
Any increase in Other Income Benefits during a period of Disability due to a cost of living adjustment will not be considered in calculating your Disability Benefits after the first reduction is made for any Other Income Benefits. This section does not apply to any cost of living adjustment for Disability Earnings.

### Lump Sum Payments
Other Income Benefits or earnings paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated over five years.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

7

*Assumed Receipt of Benefits*

We will assume you (and your dependents, if applicable) are receiving benefits for which you are eligible
from Other Income Benefits. We will reduce your Disability Benefits by the amount from Other Income
Benefits we estimate are payable to you and your dependents.

We will waive Assumed Receipt of Benefits, except for Disability Earnings for work you perform while
Disability Benefits are payable, if you:

1.    provide satisfactory proof of application for Other Income Benefits;
2.    sign a Reimbursement Agreement;
3.    provide satisfactory proof that all appeals for Other Income Benefits have been made unless we
      determine that further appeals are not likely to succeed; and
4.    submit satisfactory proof that Other Income Benefits were denied.

We will not assume receipt of any pension or retirement benefits that are actuarially reduced according to
applicable law, until you actually receive them.

*Social Security Assistance*

We may help you in applying for Social Security Disability Income (SSDI) Benefits, and may require you
to file an appeal if we believe a reversal of a prior decision is possible.

We will reduce Disability Benefits by the amount we estimate you will receive, if you refuse to cooperate
with or participate in the Social Security Assistance Program.

**Recovery of Overpayment**

We have the right to recover any benefits we have overpaid. We may use any or all of the following to
recover an overpayment:

1.    request a lump sum payment of the overpaid amount;
2.    reduce any amounts payable under this Policy; and/or
3.    take any appropriate collection activity available to us.

The Minimum Benefit amount will not apply when Disability Benefits are reduced in order to recover any
overpayment.

If an overpayment is due when you die, any benefits payable under the Policy will be reduced to recover
the overpayment.

**Successive Periods of Disability**

A separate period of Disability will be considered continuous:

1.    if it results from the same or related causes as a prior Disability for which benefits were payable;
      and
2.    if, after receiving Disability Benefits, you return to work in your Regular Occupation for less than
      6 consecutive months; and
3.    if you earn less than the percentage of Indexed Earnings that would still qualify you to meet the
      definition of Disability/Disabled during at least one month.

Any later period of Disability, regardless of cause, that begins when you are eligible for coverage under
another group disability plan provided by any employer will not be considered a continuous period of
Disability.

For any separate period of disability which is not considered continuous, you must satisfy a new
Elimination Period.

8

## LIMITATIONS

**Limited Benefit Periods for Mental or Nervous Disorders**
We will pay Disability Benefits on a limited basis during your lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1)    Anxiety disorders
2)    Delusional (paranoid) disorders
3)    Depressive disorders
4)    Eating disorders
5)    Mental illness
6)    Somatoform disorders (psychosomatic illness)

If, before reaching your lifetime maximum benefit, you are confined in a hospital for more than 14 consecutive days, that period of confinement will not count against your lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

**Limited Benefit Periods for Alcoholism and Drug Addiction or Abuse**
We will pay Disability Benefits on a limited basis during your lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1)    Alcoholism
2)    Drug addiction or abuse

If, before reaching your lifetime maximum benefit, you are confined in a hospital for more than 14 consecutive days, that period of confinement will not count against your lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

**Pre-Existing Condition Limitation**
We will not pay benefits for any period of Disability caused or contributed to by, or resulting from, a Pre-existing Condition. A "Pre-existing Condition" means any Injury or Sickness for which you incurred expenses, received medical treatment, consulted with a health professional, or took prescribed drugs or medicines, within 3 months immediately preceding the most recent effective date of insurance.

The Pre-existing Condition Limitation will apply to any added benefits or increases in benefits. This limitation will not apply to a period of Disability that begins after you are covered for at least 12 months after your most recent effective date of insurance, or the effective date of any added or increased benefits.

TL-007500.06

9

## ADDITIONAL BENEFITS

**Rehabilitation During a Period of Disability**

If we determine that you are a suitable candidate for rehabilitation, we may require you to participate in a Rehabilitation Plan and assessment at our expense. We have the sole discretion to approve your participation in a Rehabilitation Plan and to approve a program as a Rehabilitation Plan. We will work with you, the Employer and your Physician and others, as appropriate, to perform the assessment, develop a Rehabilitation Plan, and discuss return to work opportunities.

The Rehabilitation Plan may, at our discretion, allow for payment of your medical expense, education expense, moving expense, accommodation expense or family care expense while you participate in the program.

If you fail to fully cooperate in all required phases of the Rehabilitation Plan and assessment without Good Cause, no Disability Benefits will be paid, and insurance will end.

TL-007501.00

**Survivor Benefit**

We will pay a Survivor Benefit if you die while Disability Benefits are payable to you for a continuous period of Disability. The Survivor Benefit will equal 100% of the sum of the last full Disability Benefit payable to you plus the amount of any Disability Earnings by which the benefit had been reduced for that month. A single lump sum payment equal to 3 monthly Survivor Benefits will be payable.

We will pay the Survivor Benefit to your Spouse. If you do not have a Spouse, we will pay your surviving Children in equal shares. If you do not have a Spouse or any Children, we will pay your estate.

"Spouse" means your lawful spouse. "Children" means your unmarried children under age 21 who are chiefly dependent upon you for support and maintenance. The term includes a stepchild living with you at the time of your death.

TL-005107

## TERMINATION OF DISABILITY BENEFITS

Benefits will end on the earliest of the following dates:
1.    the date you earn from any occupation, more than the percentage of Indexed Earnings set forth in the definition of Disability applicable to you at that time;
2.    the date we determine you are not Disabled;
3.    the end of the Maximum Benefit Period;
4.    the date you die;
5.    the date you refuse, without Good Cause, to fully cooperate in all required phases of the Rehabilitation Plan and assessment;
6.    the date you are no longer receiving Appropriate Care;
7.    the date you fail to cooperate with us in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

Benefits may be resumed if you begin to cooperate fully in the Rehabilitation Plan within 30 days of the date benefits terminated.

TL-007502.00

10

## WHAT IS NOT COVERED

We will not pay any Disability Benefits for a Disability that results, directly or indirectly, from:

1.  suicide, attempted suicide, or self-inflicted injury while sane or insane.
2.  war or any act of war, whether or not declared.
3.  active participation in a riot.
4.  commission of a felony.
5.  the revocation, restriction or non-renewal of your license, permit or certification necessary to perform the duties of your occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

In addition, we will not pay Disability Benefits for any period of Disability during which you are incarcerated in a penal or corrections institution.

TL-007503.00

## CLAIM PROVISIONS

**Notice of Claim**

Written notice of claim, or notice by any other electronic/telephonic means authorized by us, must be given to us within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice, or notice by any other electronic/telephonic means authorized by us, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's name, the Policy Number and the claimant's name and address.

**Claim Forms**

When we receive notice of claim, we will send claim forms for filing proof of loss. If we do not send claim forms within 15 days after notice is received by us, the proof requirements will be met by submitting, within the time required under the "Proof of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by us, of the nature and extent of the loss.

**Claimant Cooperation Provision**

If you fail to cooperate with us in our administration of your claim, we may terminate the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Insurance Data**

The Employer is required to cooperate with us in the review of claims and applications for coverage. Any information we provide to the Employer in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

11

**Proof of Loss**

You must provide written proof of loss to us, or proof by any other electronic/telephonic means authorized by us, within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by us, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by us, must be given not more than one year after the 90 day period. If written proof of loss, or proof by any other electronic/telephonic means authorized by us, is provided outside of these time limits, the claim will be denied. These time limits will not apply due to lack of legal capacity.

Written proof that the loss continues, or proof by any other electronic/telephonic means authorized by us, must be furnished to us at intervals we require. Within 30 days of a request, written proof of continued Disability and Appropriate Care by a Physician must be given to us.

**Time of Payment**

Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which we are liable, will be paid at that time.

**To Whom Payable**

Disability Benefits will be paid to you. If any person to whom benefits are payable is a minor or, in our opinion is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, we may, at our option, make payment to the person or institution appearing to have assumed custody and support.

If you die while any Disability Benefits remain unpaid, we may, at our option, make direct payment to any of your following living relatives: your spouse, your mother, your father, your children, your brothers or sisters; or to the executors or administrators of your estate. We may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release us from all liability for any payment made.

**Physical Examination and Autopsy**

We may, at our expense, exercise the right to examine any person for whom a claim is pending as often as we may reasonably require. Also, we may, at our expense, require an autopsy unless prohibited by law.

**Legal Actions**

No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by us, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

**Time Limitations**

If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which you live when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**

You have the right to choose any Physician who is practicing legally. We will in no way disturb the Physician/patient relationship.

TL-004724

12

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Reinstatement of Insurance**
Your coverage may be reinstated if your insurance ends because you are on an Employer approved unpaid leave of absence. Your insurance may be reinstated only if reinstatement occurs within 12 weeks from the date it ends due to an Employer approved unpaid leave of absence or must be returning from military service pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA).

For your insurance to be reinstated the following conditions must be met.
1.     You must qualify under the Class Definition.
2.     The required premium must be paid.
3.     A written request for reinstatement and a new enrollment form for you must be received by us within 31 days from the date you return to Active Service.

Your reinstated insurance is effective on the date you return to Active Service. If you did not fully satisfy your Eligibility Waiting Period or Pre-Existing Condition Limitation (if any) before your insurance ended due to an unpaid leave of absence, you will receive credit for any time that was satisfied.

TL-004722

## GENERAL PROVISIONS

**Incontestability**
All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, no such statement will cause insurance to be contested except for fraud or eligibility for insurance.

**Misstatement of Age**
If an Insured's age has been misstated, we will adjust all benefits to the amounts that would have been purchased for the correct age.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance Law.

**Assignment of Benefits**
We will not be affected by the assignment of your certificate until the original assignment or a certified copy of the assignment is filed with us. We will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnisheed, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

13

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the
Policy. If such an error is found, the premium will be adjusted fairly.

TL-004728

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized
throughout this document. The definition of any word, if not defined in the text where it is used, may be
found either in this Definitions section or in the Schedule of Benefits.

### Active Service

If you are an Employee, you are in Active Service on a day which is one of the Employer's scheduled
work days if either of the following conditions are met.

1.  You are performing your regular occupation for the Employer on a full-time basis. You must be
    working at one of the Employer's usual places of business or at some location to which the
    Employer's business requires you to travel.
2.  The day is a scheduled holiday or vacation day and you were performing your regular occupation
    on the preceding scheduled work day.

You are considered in Active Service on a day which is not one of the Employer's scheduled work days
only if you are in Active Service on the preceding scheduled work day. An Employee of the Head Start
program is considered in Active Service during the Employer's Summer Break only if you was in Active
Service on the preceding scheduled work day.

### Appropriate Care

Appropriate Care means the determination of an accurate and medically supported diagnosis of your
Disability by a Physician, or a plan established by a Physician of ongoing medical treatment and care of
your Disability that conforms to generally accepted medical standards, including frequency of treatment
and care.

### Consumer Price Index (CPI-W)

The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S.
Department of Labor. If the index is discontinued or changed, another nationally published index that is
comparable to the CPI-W will be used.

### Covered Earnings

Covered Earnings means your wage or salary as reported by the Employer for work performed for the
Employer as in effect just prior to the date your Disability begins. Covered Earnings are determined
initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is
effective on the date of the change, if the Employer gives us written notice of the change and the required
premium is paid.

It does not include any amounts received as bonus, commissions, overtime pay or other extra
compensation.

Any increase in your Covered Earnings will not be effective during a period of continuous Disability.

14

**Disability/Disabled**
You are considered Disabled if, solely because of Injury or Sickness, you are:
1.     unable to perform the material duties of your Regular Occupation; and
2.     unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.

After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
1.     unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; and
2.     unable to earn 80% or more of your Indexed Earnings.

We will require proof of earnings and continued Disability.

**Disability Earnings**
Any wage or salary for any work performed for any employer during your Disability, including commissions, bonus, overtime pay or other extra compensation.

**Employee**
For eligibility purposes, you are an Employee if you work for the Employer and are in one of the "Classes of Eligible Employees." Otherwise, you are an Employee if you are an employee of the Employer who is insured under the Policy.

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as your agent for transactions relating to this insurance. You shall not consider any actions of the Employer as actions of the Insurance Company.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in your eligibility class.

**Good Cause**
A medical reason preventing participation in the Rehabilitation Plan. Satisfactory proof of Good Cause must be provided to us.

**Indexed Earnings**
For the first 12 months Monthly Benefits are payable, your Indexed Earnings are equal to your Covered Earnings. After 12 Monthly Benefits are payable, your Indexed Earnings are your Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.     10% of your Indexed Earnings during your preceding year of Disability; or
2.     the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
Any accidental loss or bodily harm that results directly and independently from all other causes from an Accident.

**Insurability Requirement**
An eligible person satisfies the Insurability Requirement for an amount of coverage on the day we agree in writing to accept you as insured for that amount. To determine a person's acceptability for coverage, we will require you to provide evidence of good health and may require it be provided at your expense.

15

**Insurance Company**

The Insurance Company underwriting the Policy is named on your certificate cover page. References to the Insurance Company have been changed to "we", "our", "ours", and "us" throughout the certificate.

**Insured**

You are an Insured if you are eligible for insurance under the Policy, insurance is elected for you, the required premium is paid and your coverage is in force under the Policy.

**Physician**

Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include you, your spouse, your immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in your household.

**Prior Plan**

The Prior Plan refers to the plan of insurance providing similar benefits to you, sponsored by the Employer and in effect directly prior to the Policy Effective Date. A Prior Plan will include the plan of a company in effect on the day prior to that company's addition to this Policy after the Policy Effective Date.

**Regular Occupation**

The occupation you routinely perform at the time the Disability begins. In evaluating the Disability, we will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.

**Rehabilitation Plan**

A written plan designed to enable you to return to work. The Rehabilitation Plan will consist of one or more of the following phases:

1.  rehabilitation, under which we may provide, arrange or authorize education, vocational or physical rehabilitation or other appropriate services;
2   work, which may include modified work and work on a part-time basis.

**Sickness**

The term Sickness means a physical or mental illness.

TL-007500.06

16

## IMPORTANT CHANGES FOR STATE REQUIREMENTS

If you reside in one of the following states, please read the important changes below. The provisions of your certificate are modified for residents of the following states. The modifications listed apply only to residents of that state, and only when the underlying provision is included in the certificate.

**Louisiana residents:**
The percentage of Indexed Earnings, if any, that qualifies an insured to meet the definition of Disability/Disabled may not be less than 80%.

**Minnesota residents:**
The Pre-existing Condition Limitation, if any, may not be longer than 24 months from the insured's most recent effective date of insurance.

**Texas residents:**
Any provision offsetting or otherwise reducing any benefit by an amount payable under an individual or franchise policy will not apply.

17